**LITE DEPALMA GREENBERG, LLC**
Joseph J. DePalma (jdepalma@litedepalma.com)
Bruce D. Greenberg (bgreenberg@litepalma.com)
Katrina Carroll (kcarroll@litedepalma.com)
Two Gateway Center, Suite 1201
Newark, New Jersey 07102
Tel: (973) 623-3000
Fax: (973) 623-0858

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| _____ | ) | |
| JAMES VANDER VEER and | ) | |
| ILENE STERN, on behalf of | ) | Civil Action No. 11-3951(PGS)(TJB) |
| themselves and all others similarly situated | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **FIRST AMENDED CLASS** |
| | ) | **ACTION COMPLAINT** |
| MAIBEC INCORPORATED, | ) | **AND JURY DEMAND** |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

James Vander Veer, formerly of Artisan Enterprises, Inc. ("Artisan"), and Ilene Stern ("Plaintiffs"), by and through their attorneys, make the following allegations and claims for their Class Action Complaint against Maibec, Incorporated ("Maibec," "Defendant" or the "Company"). The following allegations are made upon information and belief, except as to allegations specifically pertaining to Plaintiffs, which are made upon personal knowledge.

**PARTIES**

1.     Plaintiff James Vander Veer is a citizen of New Jersey, with an address at

126 Elm Lane, Shrewsbury, New Jersey.  Plaintiff is the former owner of Artisan Enterprises, Inc. ("Artisan"), now defunct, a construction company which installed shingles manufactured by Defendant on the homes of New Jersey homeowners.  Artisan installed Maibec Shingles (defined below) on the home of Greg Barry and Michelle Barry (the "Barrys"), who reside at 7 Haggars Lane, Fair Haven, New Jersey.  Pursuant to a settlement agreement, the Barrys assigned any claims they may have had against Maibec to Plaintiff, Artisan and others.  Plaintiff brings this action in the capacity as assignee of the Barrys' claims.

2.      Plaintiff Ilene Stern is a citizen of New York, residing at 45 Coves Run, Syosset, New York.  Plaintiff Stern purchased Maibec Shingles, which were installed in 2008 and currently remain installed on her Syosset home.

3.      Defendant Maibec is a Canadian corporation with its principal place of business at 250 - 1990 - 5th Street, Saint-Romuald, Quebec G6W 5M6, Canada.  Maibec is authorized to transact business in the State of New Jersey and is currently doing so.  According to its website, Maibec, through distributors, advertises, markets and sells shingles, at a minimum, in the following states:  Connecticut, Massachusetts, Maine, New Hampshire, New York, New Jersey, Rhode Island, North Carolina, South Carolina, Tennessee, Virginia, Pennsylvania, Delaware, Maryland, District of Columbia, West Virginia, Washington, and Oregon.  At all times relevant hereto, Maibec was engaged in the design, manufacture, marketing, and sale of shingles that have been installed in numerous homes, offices, buildings, and other structures throughout the United States, including New Jersey.

## NATURE OF THE CASE

4.      This is a putative class action brought by Plaintiff Vander Veer in his capacity as assignee of the claims of the Barrys, homeowners who purchased Maibec shingles, and by Plaintiff Ilene Stern, a homeowner and a direct purchaser of Maibec shingles.  Plaintiffs collectively bring this action on behalf of a class of all similarly situated property owners, against Maibec, the manufacturer of certain wood shingles (the "Shingles") made from the Eastern White Cedar tree.

5.      Maibec Shingles have, at least until recently, generally been considered to be very high quality. The Shingles are made of natural wood that, according to the Company, is treated for endurance.  Maibec wood Shingles are purportedly of such high quality, in fact, that the Company purports to guarantee the Shingles for 50 years.

6.      Contrary to Maibec's representations and its illusory warranty, its Shingles are plagued by design flaws that result in warping, peeling, cracking, buckling and curling.  Yet Maibec continues to sell them to the public and continues to make false representations and warranties, despite the fact that the Shingles are defective, have failed and will continue to fail, causing property damage, and costing consumers substantial removal and replacement costs.

7.      This class action seeks damages, punitive damages, injunctive relief, costs, attorneys' fees, and other relief as a result of Maibec's willful, wanton, reckless, and/or grossly negligent acts or omissions in causing consumers' homes to be in a dangerous, defective, unsafe, and unfit condition for habitation.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2)(A) because Plaintiffs and Defendant are of diverse citizenship and the matter in

controversy exceeds seventy-five thousand dollars ($75,000.00) exclusive of interest and costs; and pursuant to 28 U.S.C. § 1332(d)(2), because Plaintiffs and substantially all Class Members are citizens of a State and Defendant is a citizen of a foreign state; and the aggregate amount in controversy exceeds five million dollars ($5,000,000.00) exclusive of interest and costs.

9.      Venue is proper in this District pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to Plaintiff Vander Veer's claims occurred here, the property that is the subject of Plaintiff Vander Veer's action is situated here, and Defendant is subject to personal jurisdiction in this District.

10.     As a result of Defendant's designing, testing, developing, manufacturing, marketing, distributing, promoting and/or selling, either directly or indirectly through third parties or related entities, of Shingles to purchasers throughout New Jersey, Defendant obtained the benefits of the laws of New Jersey and profited from New Jersey commerce.

11.     Defendant conducted systematic and continuous business activities in and throughout the State of New Jersey and otherwise intentionally availed itself of the markets of the State of New Jersey through the promotion and marketing of its business.

## FACTUAL ALLEGATIONS

### About Maibec

12.     Maibec is a leading marketer of cedar shingles in North America and Canada's leading manufacturer of wood siding.

13.     Maibec is, and at all times relevant hereto, engaged in the business of designing, developing, manufacturing, distributing, marketing, selling, and installing a variety of Shingles, including but not limited to:

- Nantucket (Allegedly Grade A, with no imperfections)

- Kennebunk (Allegedly Grade B Clear, with no imperfections on exposed face)

- Bar Harbor (Alleedly Grade C 2nd Clear with Sound knots on exposed face. Contrasting tones)

### Maibec's False and Misleading Marketing of its Shingles

13.     Maibec advertised that the Shingles were safe, reliable and worry-free despite

failing to adequately test and determine the reliability of its product when used in the real world.

14.     Maibec represented on its website, regarding various makes of Shingles:

> Eastern white cedar is very durable and requires very little maintenance. It contains natural preservatives which protect it from rot and insects.

> \* \* \* \*

> Nothing compares to maibec cedar shingles.

15.     Defendant further represents on its website that:

> When it comes to siding a house, nothing compares to eastern white cedar. It is warm, beautiful, and has proven reliable for over a century. At Maibec, we have spent the last four decades improving the way white cedar shingles are made. Today, they are engineered to be so durable, you just might consider them high tech.

> \* \* \* \*

> Now the look and feel that everyone else has spent years trying to imitate is even harder to beat.

16.     Most importantly, Maibec misrepresents that its Shingles will last for 50 years,

and purportedly warrants its Shingles for 50 years against wood decay.  Defendant represents

that:

> Best of all, Maibec shingles are guaranteed to last. Our original 50-year warranty against wood decay, up to 30 years\* warranty on two coats of solid stain and 5-year warranty on labour is one of the best warranties in the industry.

17.    The foregoing representations were false and misleading because:  (1) Maibec knows that its Shingles are defective, will fail in a fraction of that time, and are not fit for their intended purpose; and (2) Maibec does not uniformly honor its warranty obligations.

18.    Defendant knowingly and intentionally concealed and failed to disclose that -- notwithstanding statements on its website, brochures, advertisements and warranties-- its Shingles routinely warp, peel, crack, buckle and curl far in advance of the expiration of the warranty period.  Indeed, Defendant's Shingles have deteriorated and will continue to deteriorate at a rate that demonstrates their lack of durability and resiliency.

19.    Similarly, Defendant knowingly and intentionally concealed and failed to disclose that it actually had no intention of providing the services set forth in its warranties.

20.    Defendant also made numerous material omissions in its literature and uniformly withheld important information relating to the design, reliability and performance of the Shingles.

21.    Purchasers of Defendant's Shingles make purchasing decisions based in part and in reliance upon the information presented by the Company on its website, marketing literature, advertisements and warranties.

22.    Defendant has had notice of the deficiencies described herein and has been routinely notified by its customers that the Shingles were defective and not functioning as advertised.

23.    Defendant and its authorized agents and distributors made each of the above described assertions, statements, representations and warranties with the intent and purpose of inducing suppliers, builders, and consumers to purchase and install the Shingles in residential

and commercial structures in the State of New Jersey and elsewhere.  However, Defendant knew that these misrepresentations were not true and that the Shingles were defective and would not function as promised.

24.     Had Defendant not withheld and omitted important information about the design, reliability and performance of the Shingles, Plaintiff and the members of the Class would not have purchased and/or installed them, or would not have purchased the Shingles at the prices that they in fact paid.

### Customer Complaints About Maibec Shingles

25.     Numerous Maibec customers have complained about the premature failure of their Shingles.  The following represents a small sampling of Internet postings by Maibec product purchasers' reflecting their frustrations with the defective Shingles:

*

> Maibec used to be the standard in New England, but they have gone way down in quality over the last few years. I bought 45 sq when I built my house a couple of years ago and sent them back. Even the lumberyard told Maibec that they were garbage. Allegedly (as told to me by my rep who talked to Maibec), they have been cutting quality to compete with less expensive competitors. After my experience, I would never use them again, nor would I recommend them to anyone except someone I dislike.

*

> We installed Maibec Nantucket shingles pre-finished with Cabot stain. They are moving whenever exposed to direct sunlight. The rep's are telling me that the movement we are experiencing is acceptable and is to be expected. I find it hard to believe that could be true and this to be normal.... The owner of the home is insisting there is something wrong with the shingles, and I resolve this situation (replace all shingles with something else) before they will pay me. Maibec has walked away from me, with no resolution. Cabot Stain seems to be on the side of Maibec and aren't willing to commit to anything or analyze the samples as promised before they knew it was a Maibec shingle..... I desperately need help..... I need an unbiased expert evaluation of the product and the installation to see if the product is defective or if there is some other underlying problem....

do you know of anyone with no ties to Maibec, Cabots, or Capital forest products that I could hire to evaluate this issue.... someone *who's* expertise is relative to white cedar. Or a place that could analyze shingle/stain samples.

Any information would be Greatly Appreciated. Thank You again for your time.

*

Maibec has lowered its grading, IMO (and others). They are using narrower shingles and are allowing for more and much larger knots. Of the several square that I did install, I noticed that they did curl/ warp much more than what I used to finish the job. I ended up finding a local guy who saws a beautiful shingle (in no small part because the local yards only sold Maibecs at the time), against which the Maibecs could not compare.

*

I am a homeowner, and have had 2 homes built in the last 4 years. Both times I used the Maibec prestained shingles (light beige), not sure of the name.

On both houses, in short time, I have had the same problems you are experiencing. Cupping, moving, curling, etc. They looked 20 years old.

I never tried to resolve the problem, figuring the shingles just stink. Burn me twice shame on me. On my next house, I am going to stain them in place with a spray.

Just wanted to you know that its not just you.

*

Shingles are cupping, curling and pulling away from sidewall on all sides of the house… The house seems to "come alive" when in direct sunlight… All installation guidelines have been met or exceeded.  The reps have not concluded the problem and are dodging the issue.

26.     Ignoring customer complaints and concerns, Defendant has failed to implement any changes to its Shingles or warranty procedures sufficient to remedy the defects associated with the products.

**Plaintiff Vander Veer**

27.     Plaintiff Vander Veer was formerly the owner of Artisan, a home improvement company, which is now defunct.  In 2003, the Barrys hired Artisan to perform certain work on their home located at 7 Haggars Lane, Fair Haven, New Jersey, including the installation of siding.

28.     Artisan subcontracted the siding job to a reputable wood siding contractor, who had installed Maibec siding on hundreds of homes since 1999.

29.     The siding was installed in or about November 2003 using Maibec Shingles.

30.     In late 2007, the Barrys telephoned Plaintiff complaining that the Maibec Shingles located on the south and west side of the house (the part of the house that was exposed to the most direct sunlight) were curling and lifting away from the house.

31.     Upon discovering this failure, the Barrys and Plaintiff repeatedly contacted Defendant and demanded that it stand by its warranty.  Defendant refused.

32.     As a result of the deterioration of the Maibec Shingles, the Barrys, in 2009 instituted suit against Artisan and others in the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-5842-09.

33.     In or about October 2010, the parties in the state court action entered into a settlement agreement settling and mutually releasing all claims each party had against the others. As part of that settlement, the Barrys assigned any claims they may have against Maibec to Plaintiff.  The state court action has now been dismissed by the state court and is no longer pending.

**<u>Plaintiff Stern</u>**

34.     As set forth herein, Plaintiff Stern resides in Syosset, New York.  In 2008, Plaintiff Stern purchased Maibec's Kennebunk Shingles to replace prior siding shingles that had been installed on the home since 1986.

35.     The installation of the Maibec Shingles on Plaintiff Stern's home began in approximately February of 2008.  The work was completed sometime in the end of 2008.  The Shingles were installed by a reputable contractor, and as admitted by Maibec, the installation was performed correctly.

36.     Plaintiff Stern selected Maibec Shingles after a protracted process. She picked Maibec Shingles over the shingles of Maibec's competitors because Maibec's wood Shingles were represented to be "maintenance free" and of superior quality.

37.     Soon after the Shingles were installed, Plaintiff Stern noticed one particular shingle on the back side of her home that was noticeably curling.  The shingle was located on a portion of the home exposed to direct sunlight.  Given what Mrs. Stern was represented about the "maintenance free" quality of Maibec's Shingles, she believed that this shingle was an aberration and did not raise the issue with Maibec.

38.     In approximately early 2010, the Shingles installed on the Plaintiff Stern's home began to experience a serious mold problem, present on the sides of her home exposed to sunlight.  Plaintiff Stern contacted Maibec about the mold issue in March of 2010.

39.      In April or May of 2010, Keith Ball of Maibec inspected Plaintiff Stern's home in response to her mold claim. At that time, Mr. Ball admitted that the Shingles had been properly installed on the house.  Thus, installation was not the cause of the mold.  After repeated communications with Maibec, including a second property visit by Mr. Ball in August 2010,

Maibec delivered chemicals to the Sterns to resolve the mold issue in February of 2011. According to Maibec, the solution delivered to the Sterns "is durable and … does not affect the finish of [Maibec's] stained shingles."  Though Maibec covered the cost of the chemical solution required to resolve the Sterns' mold problem, Maibec refused to cover the cost of labor for applying the solution.

40.     At her own expense, therefore, Plaintiff Stern paid to have the chemicals applied to her home in the Spring of 2011.  Although the mold issue has seemingly been resolved, Plaintiff Stern began to notice in the Summer of 2011 that many Shingles installed in areas of her home exposed to direct sunlight are cupping and buckling.  In at least two places, the Shingles have moved to such an extent that the unpainted undersides of those Shingles are exposed.

41.     Upon discovering this failure, Plaintiff Stern learned of other class members experiencing the same problems with Defendant's Shingles and that Defendant is refusing to honor its warranty obligations despite its knowledge that the Shingles are defective.

42.     Like Plaintiff Vander Veer's assignors, the Barrys, and Plaintiff Stern, other members of the Class also purchased defective Shingles and warranties from Defendant who, upon information and belief, did not repair or replace the Shingles in accordance with the terms of its warranties to those purchasers.

43.     Plaintiff Vander Veer's assignors, the Barrys, Plaintiff Stern and members of the Class have suffered damages as a result of Defendant's deceptive practices, including but not limited to the fact that their Shingles are defective and require replacement (which has caused, or will cause, them to incur material and labor costs) earlier than could have reasonably been expected.   Additionally, as a result of the defective quality of Defendant's Shingles, Plaintiff Vander Veer's assignors, the Barrys, Plaintiff Stern, and members of the Class have suffered

damage to the underlying structures of the homes where Defendant's defective Shingles were installed, and the values of the affected homes have been diminished.  While these customers are forced to repair and/or replace Defendant's defective Shingles, they are not reimbursed for the costs associated with this expense, in contravention of the terms of Defendant's warranties.

## CLASS ACTION ALLEGATIONS

44.     Plaintiffs seek to bring this case as a class action, under Federal Rule of Civil Procedure 23, on behalf of themselves and all others similarly situated.  The proposed Class ("the Class") is defined as:

> All individuals and entities that have owned, own, or acquired homes, residences, buildings or other structures physically located in the United States, on which Maibec Incorporated shingles are or have been installed since 1986.  Maibec Incorporated shingles are defined to include without limitation all shingles manufactured or distributed by Defendant and include, without limitation, the following brand names: Nantucket, Kennebunk and Bar Harbor.  Excluded from the Class are Defendant, any entity in which Defendant has a controlling interest or which has a controlling interest in Defendant, and Defendant's legal representatives, assigns and successors.  Also excluded are the judge to whom this case is assigned and any member of the judge's immediate family.

45.     In the alternative, Plaintiff Vander Veer brings this case as a class action, under Federal Rule of Civil Procedure 23, on behalf of himself and all others similarly situated in New Jersey as members of a proposed class (the "New Jersey Subclass"), defined as follows:

> All individuals and entities that have owned, own, or acquired homes, residences, buildings or other structures physically located in New Jersey, on which Maibec Incorporated shingles are or have been installed since 1986.  Maibec Incorporated shingles are defined to include without limitation all shingles manufactured or distributed by Defendant and include, without limitation, the following brand names: Nantucket, Kennebunk and Bar Harbor.  Excluded from the Class are Defendant, any entity in which Defendant has a controlling interest or

which has a controlling interest of Defendant, and Defendant's legal representatives, assigns and successors. Also excluded are the judge to whom this case is assigned and any member of the judge's immediate family.

46.     Similarly, in the alternative, Plaintiff Stern brings this case as a class action, under Federal Rule of Civil Procedure 23, on behalf of herself and all others similarly situated in New York as members of a proposed class (the "New York Subclass"), defined as follows:

All individuals and entities that have owned, own, or acquired homes, residences, buildings or other structures physically located in New York, on which Maibec Incorporated shingles are or have been installed since 1986. Maibec Incorporated shingles are defined to include without limitation all shingles manufactured or distributed by Defendant and include, without limitation, the following brand names: Nantucket, Kennebunk and Bar Harbor. Excluded from the Class are Defendant, any entity in which Defendant has a controlling interest or which has a controlling interest of Defendant, and Defendant's legal representatives, assigns and successors. Also excluded are the judge to whom this case is assigned and any member of the judge's immediate family.

47.     Plaintiffs reserve the right to re-define these Classes prior to class certification.

48.     The number of persons who are members of the Class (or Subclasses), as described above, is so numerous that joinder of all members in one action is impracticable.

49.     Questions of law and fact that are common to the entire Class (or Subclasses), predominate over individual questions because the actions of Defendant complained of herein were generally applicable to the entire Class (or Subclasses). These legal and factual questions include, but are not limited to:

a)   whether the Shingles are defective;

b)   whether Defendant knew or should have known of the defective nature of the Shingles;

c)  whether Defendant owed a duty to Plaintiffs and the Class to exercise reasonable care in the design, manufacture and marketing of the Shingles;

d)  whether Defendant breached this duty;

e)  whether the Shingles failed to perform in accordance with the reasonable expectations of ordinary consumers;

f)  whether the Shingles failed to perform for the time warranted by Defendant;

g)  whether the warranties are unconscionable and unenforceable; and

h)  whether Plaintiffs and the Class suffered damages as a result of Defendant's conduct.

50.     All questions as to the representations and publicly disseminated advertisements and statements attributable to Defendant at issue herein are similarly common.  A determination of Defendant's knowledge regarding the misleading and deceptive nature of the statements made in its website, brochures, advertisements and warranties and its breaches of contract will be applicable to all members of the Class (or Subclasses, as defined above).  Further, whether Defendant violated any applicable state laws and pursued the course of conduct complained of herein, whether Defendant acted intentionally or recklessly in engaging in the conduct described herein, and the extent of the appropriate measure of injunctive and declaratory relief, damages and restitutionary relief are common questions to the Class (or Subclasses, as defined above).

51.     Plaintiffs' claims are typical of the members of the Class.  Plaintiff Vander Veer's assignors and Plaintiff Stern purchased defective Shingles from Defendant.  The Shingles malfunctioned before the expiration of the applicable warranty period.  Plaintiffs, like all members of the Class, have suffered damages associated with the use of Defendant's defective products.

52.     Plaintiffs will fully and adequately represent and protect the interests of the Class (or Subclasses, as defined above) because of the common injuries and interests of the members of the Class (or Subclasses) and the singular conduct of Defendant that is or was applicable to all members of the Class (or Subclasses).  Plaintiffs have retained counsel who are competent and experienced in the prosecution of class action litigation.  Plaintiffs have no interests that are contrary to or in conflict with those of the Class (or Subclasses) they seek to represent.

53.     A class action is superior to all other available methods for fair and efficient adjudication of this controversy.  Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

54.     The prosecution of separate actions by individual members of the Class (or Subclasses) would create a risk of inconsistent and varying adjudications concerning the subject of this action, which adjudications could establish incompatible standards of conduct for Defendant under the laws alleged herein.

55.     The claims of the Class (or Subclasses) may be certified under Rule 23(b)(1), (b)(2) and/or (b)(3).  The members of the Class (or Subclasses) also seek declaratory and injunctive relief but also seek sizeable monetary relief.

## ESTOPPEL FROM PLEADING AND TOLLING OF APPLICABLE STATUTES OF LIMITATION

56.     Because the defects in the Shingles are latent and not detectable until manifestation, the Barrys, Plaintiff Stern and the members of the Class (or Subclasses) were not reasonably able to discover that their Shingles were defective until after installation, despite their exercise of due diligence.

57.     Defendant knew that the Shingles were defective prior to the time of sale, and concealed that material information from the Barrys, Plaintiff Stern and all consumers.

58.     As such, any applicable statutes of limitation have been tolled by Defendant's concealment of material facts and Defendant is estopped from relying on any such statutes of limitation.

**FIRST CLAIM FOR RELIEF**
**(Solely on behalf of Plaintiff Vander Veer and the New Jersey Subclass)**
**(New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-2)**

59.     Plaintiffs re-allege and incorporate by reference each of the paragraphs above.

60.     The New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1, *et seq.*, (the "CFA") deems unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce, unlawful.  The CFA provides, "The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice . . . ." N.J.S.A. § 56:8-2.

61.     Defendant's affirmative misrepresentations within its advertisements of its Shingles and its failure to notify purchasers of the defects of its Shingles and of the true nature in which it implements its warranty process took place within New Jersey and constitute violations of the CFA.

62.    The CFA is applicable to the claims of the New Jersey Subclass because the conduct of Defendant constitutes an unlawful practice in connection with the sale and advertisement of merchandise.

63.    Defendant intended that Plaintiff Vander Veer's assignors, the Barrys, and the New Jersey Subclass members would rely on the false information and fraudulent inducements so that they would purchase Defendant's Shingles and increase the consumption of Defendant's products.  Defendant misled the Barrys and New Jersey Subclass.

64.    Had Defendant disclosed this material information regarding its Shingles to Plaintiff Vander Veer's assignors, the Barrys, and the other members of the New Jersey Subclass, they would not have purchased the Shingles or would not have paid the price they did for the Shingles.

65.    As a result of the nature of Defendant's deceptive conduct (concealment, suppression and omissions of various material facts), the Barrys, Plaintiff Vander Veer and the New Jersey Subclass members suffered ascertainable loss as set forth in greater detail above.  A finding that Defendant's conduct violated the law will also operate as a finding that each and every member of the New Jersey Subclass suffered pecuniary loss.

66.    The conduct of the Defendant described herein constitutes the employment of fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice upon Plaintiff Vander Veer (as assignee of the Barrys' claims) and the New Jersey Subclass members within the meaning of the CFA.

67.    Defendant had special knowledge of material facts to which the Barrys, Plaintiff Vander Veer and the New Jersey Subclass members did not have access; therefore, Defendant had a duty to disclose these facts so as to prevent its statements from being misleading.

291829 v1                                                17

68.     Defendant's conduct as stated herein constitutes substantial aggravating circumstances in addition to its breach of warranty, in violation of the CFA.

69.     The acts, practices, misrepresentations and omissions by Defendant described above constitute unconscionable, unlawful, fraudulent and deceptive commercial practices. Defendant knew that its Shingles contained a characteristic defect, but was determined to benefit economically and, nonetheless, distributed these defective products to unsuspecting consumers. Defendant's conduct presents a continuing threat to Class members and the general public in that Defendant has refused to publicly acknowledge the defect, correct its wrongdoing, and provide compensation for the damages it has caused.

70.     Plaintiff Vander Veer (as assignee of the Barrys' claims) and members of the New Jersey Subclass have suffered damages as a result of Defendant's deceptive practices, including but not limited to the fact that the siding has been damaged and the values of the affected homes have been diminished.  While the Barrys, Plaintiff Vander Veer and the New Jersey Subclass are forced to repair and/or replace Defendant's defective Shingles, they are not reimbursed for the costs associated with this expense, in contravention of the terms of Defendant's warranties.  Thus, the Barrys, Plaintiff Vander Veer and the New Jersey Subclass have suffered ascertainable losses as a result of Defendant's conduct as alleged herein.

71.     Pursuant to the CFA, and as a result of Defendant's conduct, Plaintiff Vander Veer (as assignee of the Barrys' claims) and the New Jersey Subclass members are entitled to monetary damages.

**SECOND CLAIM FOR RELIEF**
**(Breach of Contract)**

72.     Plaintiffs re-allege and incorporate by reference each of the paragraphs above.

73.     During the Class Period, Plaintiff Vander Veer's assignors, the Barrys, Plaintiff Stern and Class members, upon purchasing Defendant's Shingles, entered into a contract and warranty agreement with Defendant.

74.     Defendant uniformly breached its contract and warranty agreement with the Barrys, Plaintiff Stern and the members of the Class by failing to perform according to its obligations under the applicable law and the agreements.

75.     Defendant's contract and warranty agreements were subject to the implied covenants that Defendant would conduct its business with the Barrys, Plaintiff Stern and the members of the Class in good faith and would deal fairly with its consumers.

76.     Defendant breached their contract and warranty agreement with the Barrys, Plaintiff Stern and the members of the Class by violating the implied covenant of good faith and fair dealing inherent in agreements.  Defendants breached the covenant by selling Plaintiff Vander Veer's assignors, the Barrys, Plaintiff Stern and Class members Shingles that were inherently defective in bad faith with knowledge that the contract and/or warranties were unconscionable and by abusing its discretion in its performance of the contract by intentionally subjecting the Barrys, Plaintiff Stern and the members of the Class to a risk, to wit, the defect inherent in the Shingles, beyond what the Barrys, Plaintiff Stern and the members of the Class could have contemplated at the time of purchasing the Shingles.

77.     Further, Defendant breached the implied covenant by not providing terms in the contract and/or warranty that conspicuously stated to the Barrys, Plaintiffs and Class members that the Shingles would develop the defect.

78.     At all times pertinent hereto, the Barrys, Plaintiff Stern and the members of the Class fully performed and satisfied their obligations under the contract and warranty agreement.

79.     As a proximate result of the aforementioned wrongful conduct and breaches committed by Defendant, Plaintiff Vander Veer (as assignee of the Barrys' claims), Plaintiff Stern and the Class members have suffered and will continue to suffer damages and economic loss in an amount to be proven at trial.  Plaintiffs and Class members are entitled to damages and injunctive and declaratory relief as claimed below.

## THIRD CLAIM FOR RELIEF
### (Breach of Express Warranty)

80.     Plaintiffs re-allege and incorporate by reference each of the paragraphs above.

81.     In conjunction with its sale of Shingles, Defendant warranted and promised that it would provide an operational product for a particular warranty period or replace the defective product without consumers having to pay for the labor costs involved.

82.     Defendant placed the Shingles upon the market and, through its advertisements and warranties, represented the quality of the Shingles to the public in such a way as to induce reliance upon its representations.

83.     Plaintiff Vander Veer's assignors, the Barrys, Plaintiff Stern and the members of the Class did in fact rely on Defendant's representations in purchasing the Shingles.

84.     Plaintiff Vander Veer's assignors, the Barrys, Plaintiff Stern and the members of the Class understood that Defendant's promises were part of the bargain when purchasing Defendant's Shingles.

85.     Defendant breached the express warranties because, as set forth in detail above, it failed to provide customers with a product that would perform the basic intended and essential functions of Shingles for the specified warranty period.

86.     Defendant has received notice of the breaches of warranty alleged herein, by virtue of complaints made by purchasers of its Shingles.  Upon information and belief, Defendant has received scores of claims, complaints and other notices from its consumers advising Defendant of the defects in its Shingles.

87.     Defendant has failed to provide Plaintiff Vander Veer's assignors, the Barrys, Plaintiff Stern or the Class, as a warranty replacement, Shingles that conform to the qualities and characteristics that Defendant has expressly warranted are possessed by Defendant's Shingles.

88.     Despite requests to do so, Defendant refuses to adequately repair or replace its Shingles in accordance with the stated warranty terms.  As a result, the Barrys, Plaintiff Stern and members of the Class whose shingles had not failed are forced to wait for the substantially certain failure of their Shingles and suffer the accompanying losses associated therewith.

89.     Further, the warranties themselves are unconscionable and unenforceable in that they fail to achieve their specified purpose because they do not provide consumers with an adequate remedy for the failure of Defendant's Shingles.  The warranties do not provide the means for purchasers to repair and replace either the defective product itself, or structural damages to their homes associated with and caused by these defects.  Applying any warranty limitation to avoid the need to repair the defects set forth herein would be unconscionable in that, *inter alia*, the shingle products contain inherent defects that were already existing at the time of purchase and Defendant knew, or was reckless in not knowing, about the defects, which could not be discovered by the Barrys, Plaintiff Stern and the members of the Class at the time of their purchases lacked any meaningful choice with respect to the warranty terms.

90.     As a direct and proximate result of Defendant's breach of warranty, Plaintiff Vander Veer (as assignee of the Barrys' claims), Plaintiff Stern and the Class members have suffered and will continue to suffer damages and losses in an amount to be proven at trial.

### FOURTH CLAIM FOR RELIEF
### (Breach of Implied Warranty)

91.     Plaintiffs re-allege and incorporate by reference each of the paragraphs above.

92.     Defendant designed, developed, tested, manufactured, distributed, marketed, and sold Shingles for purposes of its eventual sale to end users and installation on homes, offices, buildings, and other structures.

93.     Defendant impliedly warranted that its Shingles were properly designed, developed, tested, manufactured, distributed, marketed, and sold and that the designs and materials were proper and of first-class and workmanlike quality.

94.     Defendant knew that the Shingles it designed, manufactured and created would be used by consumers on their homes, offices, buildings, and other structures.

95.     Plaintiff Vander Veer's assignors, the Barrys, Plaintiff Stern and the members of the Class relied on Maibec's skill and/or judgment to furnish the Shingles for use on their homes, offices, buildings, and other structures, and Defendant knew or should have known that these customers relied on Defendant's special knowledge.

96.     Plaintiff Vander Veer's assignors, Plaintiff Stern and the members of the Class relied upon the promises contained within Defendant's warranties and believed that said designs, work, and materials were of first-class workmanlike quality and fit for the intended use and purpose.

97.     Defendant breached said warranty by designing, developing, manufacturing, distributing, marketing, and selling defective Shingles, which were not of first-class workmanlike quality or fit for the intended use.

98.     Defendant provided a defective product and failed to properly inspect, test, and identify defects in the Shingles.

99.     But for Defendant's conduct alleged herein and their breach of implied warranty, Plaintiff Vander Veer's assignors, the Barrys, Plaintiff Vander Veer, Plaintiff Stern and the members of the Class would not have suffered the damages and losses alleged herein.

100.    Defendant has been notified of the defective nature of its Shingles and of its breach of warranty within a reasonable time of its discovery.

101.    As a direct and proximate result of Defendant's breach of implied warranty, Plaintiff Vander Veer (as assignee of the Barrys' claims), Plaintiff Stern and the Class members have suffered and will continue to suffer damages and losses in an amount to be proven at trial.

## FIFTH CLAIM FOR RELIEF
### (Breach of Warranty of Merchantability)

102.    Plaintiffs re-allege and incorporate by reference each of the paragraphs above.

103.    Defendant designed, developed, tested, manufactured, distributed, marketed, and sold its Shingles for purposes of its eventual sale to end users and installation on homes, offices, buildings, and other structures.  Plaintiff Vander Veer's assignors, the Barrys, Plaintiff Stern and the members of the Class relied on the promises contained within Defendant's warranties that the Shingles were free from defects.

104.    The Shingles were not fit for the ordinary purpose for which shingles are intended to be used.

105.     Defendant expected Plaintiff Vander Veer's assignors, the Barrys, Plaintiff Stern and the members of the Class to use the Shingles on their properties and such use was reasonably foreseeable.  The Shingles sold by Defendant were not merchantable at the time they were sold.

106.     Defendant knew and/or should have known that its Shingles were defective and not of acceptable quality as designed and/or that the Shingles were manufactured with substandard and defective materials.

107.     Defendant knew and/or should have known that its Shingles were not generally fit for the ordinary purpose for which they were intended to be used as they were designed and manufactured with substandard and defective materials.

108.     Defendant knew and/or should have known that its Shingles would reach the end user without substantial change and in the condition in which they were sold.

109.     Defendant's Shingles failed in their ordinary and intended use.

110.     Defendant has been notified of the defective nature of its Shingles and of its breach of warranty within a reasonable time of its discovery.

111.     But for the Defendant's conduct alleged herein and its breach of warranty of merchantability, Plaintiff Vander Veer's assignors, the Barrys, Plaintiff Vander Veer, Plaintiff Stern and the members of the Class would not have suffered the damages and losses alleged herein.

112.     As a direct and proximate result of Defendant's breach of warranty of merchantability, Plaintiff Vander Veer's assignors, the Barrys, Plaintiff Vander Veer, Plaintiff Stern and the members of the Class have suffered and will continue to suffer damages and losses in an amount to be proven at trial.

## SIXTH CLAIM FOR RELIEF
### (Negligence)

113.    Plaintiffs re-allege and incorporate by reference each of the paragraphs above.

114.    Defendant owed a duty to Plaintiff Vander Veer's assignors, the Barrys, Plaintiff Stern and the members of the Class to exercise reasonable care in the design, manufacture, quality control and marketing of the Shingles, and to disclose to the consuming public the foreseeable risks associated with the use of its defective Shingles.  Defendant had a further duty not to put defective products such as the Shingles on the market.

115.    Defendant breached its duty by designing, manufacturing, selling, advertising and warranting a defective product, and by failing to take those steps necessary to repair or otherwise discontinue selling a defective product to consumers.

116.    Defendant was aware, or reasonably should have been aware, that the Shingles were defective and did not perform their intended use.

117.    When they purchased Defendant's Shingles, Plaintiff Vander Veer's assignors, the Barrys, Plaintiff Stern and the Class were not aware of their defective nature.

118.    As a direct and proximate cause of the foregoing, Plaintiff Vander Veer (as assignee of the Barrys' claims), Plaintiff Stern and the Class members have suffered and will continue to suffer damages and losses in an amount to be proven at trial.

## SEVENTH CLAIM FOR RELIEF
### (Strict Products Liability)

119.    Plaintiffs re-allege and incorporate by reference each of the paragraphs above.

120.    At all times during the Class period, Defendant was a commercial manufacturer and supplier of the Shingles at issue in this case.

121.    Defendant's Shingles were expected to, and did in fact, reach consumers without substantial change in the condition in which they were supplied.

122.    Defendant's Shingles were and are defectively designed and/or manufactured, and were and are unfit for their intended use.

123.    The Shingles fail to perform in accordance with the reasonable expectations of Plaintiffs and the Class and the benefits of the design of the Shingles do not outweigh the risk of their failure.

124.    Defendant has/had a duty and responsibility to disclose to the consuming public the foreseeable risks associated with the use of its Shingles.  Defendant further has/had a duty not to put defective products on the market or to offer a proper substitute.

125.    Defendant breached its duty by failing to disclose the defects that it knew were associated with the Shingles, and by allowing the sale and use of the Shingles when Defendant knew they would not perform as intended.

126.    The defective Shingles caused, among other damages and expense, damage to the underlying structures of the homes where the Shingles were installed, diminished values to affected homes, and costs associated with the repair and/or replacement of defective Shingles.

127.    As a direct and proximate cause of the foregoing, Plaintiff Vander Veer (as assignee of the Barrys' claims), Plaintiff Stern and the Class members have suffered and will continue to suffer damages and losses in an amount to be proven at trial.

## EIGHTH CLAIM FOR RELIEF
### (Unjust Enrichment)

128.    Plaintiffs re-allege and incorporate by reference each of the paragraphs above.

129.   As the intended and expected result of its conscious wrongdoing, Defendant has profited and benefited from the purchase of Shingles by Plaintiff Vander Veer's assignors, the Barrys, Plaintiff Stern and the Class.

130.   Defendant has voluntarily accepted and retained these profits and benefits, with full knowledge and awareness that, as a result of Defendant's misconduct, the Barrys, Plaintiff Stern and the Class were not receiving products of the quality, nature, fitness or value that had been represented by Defendant, and that reasonable consumers expected.

131.   Defendant has been unjustly enriched by its fraudulent and deceptive withholding of benefits to Plaintiff Vander Veer's assignors, the Barrys, Plaintiff Stern and the Class, at the expense of these parties.

132.   Equity and good conscience militate against permitting Defendant to retain these profits and benefits.

**NINTH CLAIM FOR RELIEF**
**(Solely on behalf of Plaintiff Stern and the New York Subclass)**
**(Violations of Sections 349-350 of New York's General Business Law:**
**Deceptive Trade Practices and False Advertising)**

133.   Plaintiffs re-allege and incorporate by reference each of the paragraphs above.

134.   Maibec is a merchant with respect to its sale of the Shingles.

135.   At all times relevant to this Complaint, Maibec was engaged in the design, manufacture, advertisement, promotion, and sale of Shingles throughout the United States, including within New York.

136.   Maibec willfully and knowingly committed unfair and deceptive trade practices by promoting, advertising, marketing, labeling, and selling its defective Shingles to the consuming public.

137.     When Defendant was designing, marketing, manufacturing, testing and selling its Shingles, Maibec knew or reasonably should have known that the Shingles were subject to failure when exposed to reasonably foreseeable conditions and under reasonably foreseeable uses, and therefore the Shingles were unreasonably dangerous for consumers to use.

138.     At no time did Maibec take reasonable steps to remedy the defects in the Shingles or try to ensure that the Shingles were otherwise fit for their intended use.

139.     Further, Maibec failed to advise consumers regarding the use and potential problems associated with its Shingles.

140.     Through its marketing, promoting and advertising of the Shingles throughout the United States, including within New York, Maibec intended to and did in fact deceive and mislead consumers regarding material facts, by causing them to believe that the Shingles were a merchantable, viable and warrantable Maibec product, when they in fact were not.

141.     Defendant's actions complained of herein were consumer oriented and affected more than one consumer, occurred and occur in the conduct of trade or commerce, and all of the conduct alleged herein transpires in the course of Defendant's business.

142.     Defendant's conduct represents unfair acts or practices that have the capacity to, have, and continues to deceive consumers.

143.     As a direct and proximate result of these unfair and deceptive trade practices, Plaintiff Stern and the Subclass have been damaged as alleged herein, and are entitled to recover actual and/or punitive damages to the extent permitted by law, including class action rules, in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this case be certified and maintained as a class action and for judgment to be entered upon Defendant as follows:

1.      For economic and compensatory damages on behalf of Plaintiffs and all members of the Class;

2.      For restitution;

3.      For actual damages sustained or as to claims under the New Jersey Consumer Fraud Act and N.Y. Gen. Bus. Law §§349-350, for treble damages;

4.      For punitive damages, as otherwise applicable;

5.      For declaratory relief, including but not limited to declarations that:

>       a.  all of Defendant's Shingles manufactured from 1986 until the present have defects that cause them to fail and leak, resulting in water damage to property and the necessity of the removal and replacement of the Shingles;

>       b.  All of Defendant's Shingles manufactured from 1986 until the present have a defect in workmanship and material that causes failures; and

>       c.  Defendant knew of the defects in the Shingles and that the limitations contained in the warranties are unenforceable;

6.      For injunctive relief, including but not limited to an injunction requiring that:

>       a.  Defendant shall re-audit and reassess all prior warranty claims on its Shingles, including claims previously denied in whole or in part, where the denial was based on warranty or other grounds; and

>       b.  Defendant shall establish an inspection program and protocol to be communicated to Class members, which will require Defendant to inspect,

upon request, a Class member's structure to determine whether a Shingle

failure is manifest.

7.    For reasonable attorneys' fees and reimbursement of all costs for the prosecution

of this action; and

8.    For such other and further relief as this Court deems just and appropriate.

## JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury on all issues so triable.


**LITE DEPALMA GREENBERG, LLC**

Date: September 23, 2011

_/s/ *Joseph J.DePalma*_____
Joseph J. DePalma
Bruce D. Greenberg
Katrina Carroll
Two Gateway Center, Suite 1201
Newark, NJ 07102
Telephone: (973) 623-3000
Facsimile: (973) 623-0858
jdepalma@litedepalma.com
bgreenberg@litedepalma.com
kcarroll@litedepalma.com

Charles J. LaDuca
Cuneo Gilbert & LaDuca, LLP
507 C Street, N.E.
Washington, D.C. 20002
Telephone: (202) 789-3960
charles@cuneolaw.com

***Counsel for Plaintiffs***

## <u>LOCAL CIVIL RULE 11.2 CERTIFICATION</u>

Plaintiffs, by their attorneys, hereby certify that the matter in controversy is related to the following state court action: *Greg and Michelle Barry v. Artisan Enterprises, Inc., et al*. Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-5842-09.

I hereby certify that the following statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.


Dated: September 23, 2011                        **LITE DEPALMA GREENBERG LLC**


                                                 _/s/ *Joseph J. DePalma*_____
                                                 By: Joseph J. DePalma
                                                 Bruce D. Greenberg
                                                 Katrina Carroll
                                                 Two Gateway Center
                                                 Suite 1201
                                                 Newark, NJ 07102
                                                 Telephone: (973) 623-3000
                                                 Facsimile: (973) 623-0858