**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JAMES VANDER VEER and ILENE STERN, on behalf of themselves and all others similarly situated, | Civil Action No.: 11-3951 |
| Plaintiffs, | **MEMORANDUM & ORDER** |
| v. | |
| MAIBEC INCORPORATED, | |
| Defendant. | |

**SHERIDAN, U.S.D.J.**

This matter comes before the Court on Defendant, Maibec Incorporated's ("Maibec") motion to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim (ECF No. 14).  On July 8, 2011 plaintiff James Vander Veer ("Vander Veer") filed a complaint on behalf of himself and all others similarly situated against Maibec (ECF No. 1).  On September 23, 2011**,** Vander Veer filed a First Amended Class Action Complaint ("Amended Complaint"),  which added Ilene Stern ("Stern") as a named plaintiff (ECF No. 9).  The Amended Complaint was filed on behalf of Vander Veer, Stern, and all others similarly situated, and alleges nine counts as follows:  (1) New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. § 56:8-2; (2) breach of contract; (3) breach of express warranty; (4) breach of implied warranty; (5) breach of warranty of merchantability; (6) negligence; (7) strict products liability; (8) unjust enrichment; and (9) violations of Sections 349 and 350 of New York's General Business Law (deceptive trade practices and false advertising).  On October 5, 2011, plaintiff Vander Veer filed a notice of

voluntary dismissal (ECF No. 12).  As such, the only named plaintiff left in this matter is Stern.

I.    **FACTS**

The Amended Complaint alleges that Stern is a citizen of the State of New York, residing in Syosset, New York.[1]  (Amended Complaint, ECF No. 9, ¶ 2).  Stern alleges that she is a homeowner and a direct purchaser of Maibec shingles. *Id.* at ¶ 4.  Stern is proceeding in this action on behalf of herself and a putative class of similarly situated property owners against Maibec.  *Id.*

The Amended Complaint avers that Maibec is a Canadian corporation with its principal place of business in Quebec, Canada, and that Maibec is authorized to transact business in the State of New Jersey and is currently doing so.  *Id.* at ¶ 3.  The Amended Complaint states that at all relevant times to this action, Maibec was engaged in the design, manufacture, marketing, and sale of shingles that have been installed in numerous homes, offices, buildings, and other structures throughout the United States, including in New Jersey. *Id.*  Stern asserts that Maibec is a leading marketer of cedar shingles in North America and Canada's leading manufacturer of wood siding, and its shingles have generally been considered to be very high quality.  *Id.* at ¶¶ 6, 12.  Stern avers that according to Maibec, the shingles are made of natural wood that is treated for endurance, and that Maibec wood shingles are allegedly of such high quality that Maibec guarantees the shingles for 50 years.[2]  *Id.* at ¶ 6.

---

[1]    The parties have acknowledged in their briefs that New York substantive law should be applied to this case.  The Court agrees, and therefore, will apply New York substantive law.

[2]    Maibec submitted with its motion to dismiss true and correct copies of its 50-year warranty against wood decay, its 5-year solid stain warranty for shingles with one solid color factory coat of stain, and its 15-year solid stain warranty for shingles with two solid color factory coats of stain.  (ECF No. 14-2, exhibits B-D).  Stern did not object to Maibec's submission of its warranties, and in fact, referenced these warranties in her brief in opposition to the motion to dismiss.  (ECF No. 17, p. 9-10).  The Court may consider Maibec's warranties without converting Maibec's motion to dismiss to a motion for summary judgment, as the Amended Complaint references Maibec's warranties, and appears to rely upon these warranties.  *See Pension Benefit Guar. Corp v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993); *In re Burlington Coat Factory Sec. Litigation*, 114 F.3d 1410, 1426 (3d Cir. 1997).  *See also Woods v. Maytag*, 2010 U.S. Dist. LEXIS 116595, *9 (E.D.N.Y. 2010) (*citing Holowecki v. Federal Exp. Corp.,* 440 F.3d 558, 565-66 (2d Cir. 2006)).

The Amended Complaint further alleges that Stern purchased Maibec's Kennebunk shingles in 2008 to replace prior siding shingles on her home. *Id.* at ¶¶ 2, 34. Stern claims that the shingles were installed in 2008 by a reputable contractor, and currently remain installed on her home. *Id.* at ¶¶ 2, 34, 35. Stern avers that she selected Maibec shingles after a protracted process, picking Maibec shingles over the shingles of Maibec's competitors because Maibec's wood shingles were represented to be "maintenance free" and of superior quality. *Id.* at ¶ 36. Stern further alleges that soon after the shingles were installed, she noticed that there was one particular shingle on the backside of her home that was noticeably curling. The shingle was located on a portion of the home exposed to direct sunlight. She believed that this shingle was an aberration and did not raise the issue with Maibec. *Id.* at ¶ 37.

Stern claims that in early 2010, the Maibec shingles installed on her home experienced a serious mold problem, which was present on the sides of her home exposed to sunlight. *Id.* at ¶ 38. Stern states that she contacted Maibec about the mold issue in March of 2010. *Id.* Stern avers that in April or May of 2010, Keith Ball ("Ball") of Maibec inspected her home in response to her mold claim. *Id.* at ¶ 39. Stern further alleges that when Ball inspected her home, he admitted that the shingles had been properly installed on the house. *Id.* Stern asserts that after repeated communications with Maibec, including a second visit from Ball in August 2010, Maibec delivered chemicals to the Sterns to resolve the mold issue in February of 2011. *Id.* Stern alleges that Maibec represented that the chemicals delivered to her to resolve the mold issue are durable and do not affect the finish of Maibec's stained shingles. *Id.* Stern claims that the mold issue has seemingly been resolved. *Id.* at ¶ 40.

Stern alleges that in summer 2011, she began to notice that many shingles installed in areas of her home exposed to direct sunlight were cupping and buckling. *Id.* Stern claims that in at least

two places the shingles have moved to such an extent that the unpainted undersides of those shingles have become exposed. *Id.* Stern alleges that she has suffered damage to the underlying structure of her home where the shingles are cupping and/or buckling, and the value of her home has been diminished. *Id.* at ¶ 43.

Stern alleges that Maibec's shingles are plagued by design flaws that result in warping, peeling, cracking, buckling and curling. The Amended Complaint states that despite these alleged design flaws, Maibec continues to sell the shingles to the public and continues to make false representations and warranties. *Id.* at ¶ 6. Stern further alleges that Maibec advertised that its shingles were safe, reliable and worry-free, despite failing to adequately test and determine the reliability of its product when in use. *Id.* at ¶ 13. The Complaint asserts that Maibec made the following representations on its website:

> "Eastern white cedar is very durable and requires very little maintenance. It contains natural preservatives which protect it from rot and insects.
>
> "Nothing compares to maibec cedar shingles."
>
> "When it comes to siding a house, nothing compares to eastern white cedar. It is warm, beautiful, and has proven reliable for over a century. At Maibec, we have spent the last four decades improving the way white cedar shingles are made. Today, they are engineered to be so durable, you just might consider them high tech."
>
> "Now the look and feel that everyone else has spent years trying to imitate is even harder to beat."
>
> "Best of all, Maibec shingles are guaranteed to last. Our original 50-year warranty against wood decay, up to 30 years* warranty on two coats of solid stain and 5-year warranty on labour is one of the best warranties in the industry." *Id.* at ¶¶ 14-16.

Stern alleges that the above-listed representations were false and misleading because Maibec knows that its shingles are defective, that the shingles will fail in a fraction of the time that they are

guaranteed for, and that the shingles are not fit for their intended purpose.  Stern also alleges that Maibec does not uniformly honor its warranty obligations.  *Id.* at ¶ 17.

Stern further alleges that Maibec knowingly and intentionally concealed and failed to disclose that—notwithstanding statements on its website, brochures, advertisements, and warranties—its shingles routinely warp, peel, crack, buckle and curl far in advance of the expiration of the warranty period.  Stern also asserts that Maibec's shingles have deteriorated and will continue to deteriorate at a rate that demonstrates their lack of durability and resiliency.  *Id.* at ¶ 18. Stern further claims that Maibec knowingly and intentionally concealed and failed to disclose that it had no intention of providing the services set forth in its warranties.  *Id.* at ¶ 19.  Stern further avers that Maibec also made numerous material omissions in its literature and uniformly withheld important information relating to the design, reliability and performance of the shingles.  *Id.* at ¶ 20.

Stern asserts that Maibec and its authorized agents and distributors made the above-listed assertions, statements, representations and warranties with the intent and purpose of inducing consumers to purchase and install its shingles in New Jersey and elsewhere.  But, Stern claims, Maibec knew that these misrepresentations were not true and that the shingles were defective and would not function as promised.  *Id.* at ¶ 23.  Stern claims that had Maibec not withheld and omitted important information about the design, reliability and performance of the shingles, she and the putative class members would not have purchased and/or installed them, or would not have purchased the shingles at the prices that they paid.  *Id.* at ¶ 24.

Stern further claims that Maibec has had notice of the above-listed deficiencies concerning its shingles, and has been routinely notified by its customers that the shingles were defective and not functioning as advertised.  *Id.* at ¶ 22.  Stern further asserts that numerous Maibec customers have complained about the premature failure of their shingles, and in support of this allegation, the

Amended Complaint lists a sampling of internet postings by Maibec product purchasers expressing their negative opinions about Maibec shingles.  *Id.* at ¶ 25.  The Amended Complaint does not delineate the names of the persons who made these internet postings, or the date, time, or website on which these postings were made.  Stern avers that Maibec has ignored customer complaints and concerns, and failed to implement any changes to its shingles or warranty procedures sufficient to remedy the alleged defects associated with the products.  *Id.* at ¶ 26.

## II.   DISCUSSION

### A.   Motion to Dismiss Standard

On a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), the Court is required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party.  *See*, *e.g.*, *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 (3d Cir. 1994). A complaint should be dismissed only if the alleged facts, taken as true, fail to state a claim.  *Iqbal*, 129 S. Ct. at 1950.  The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail.  *Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000), *cert. denied*, *Forbes v. Semerenko*, 531 U.S. 1149 (2001). While a court will accept well-pled allegations as true for the purposes of the motion, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations.  *Iqbal*, 129 S. Ct. at 1949; *Morse v. Lower Merion School District*, 132 F.3d 902, 906 (3d Cir.1997). "The pleader is required to 'set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist.'"  *Kost v. Kozakewicz*, 1 F.3d 176, 183 (3d

Cir.1993) (*quoting* 5A Wright & Miller, Fed. Practice & Procedure: Civil 2d § 1357 at 340).  The

Supreme Court has recently held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to

dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of

his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of

the elements of a cause of action will not do, . . . .  Factual allegations must be enough to raise a right

to relief above the speculative level, . . . on the assumption that all the allegations in the complaint

are true (even if doubtful in fact), . . . ." *Twombly*, 550 U.S. at 555 (internal citations and quotations

omitted); *see also Iqbal*, 129 S. Ct. at 1949-50.

### B.   NJCFA Claim

Count One of the Amended Complaint alleges a violation of the NJCFA.  This allegation is

made on behalf of Vander Veer and the New Jersey subclass.  Maibec moved to dismiss this claim

on the ground that Vander Veer has voluntarily withdrawn from this action, and therefore, this claim

can no longer be asserted.  Having received no opposition from Stern in her Memorandum of Law

in Opposition to Defendant's Motion to Dismiss Plaintiff's First Amended Complaint (ECF No. 17),

the Court grants Maibec's motion to dismiss the NJCFA claim.

### C.   Breach of Express Warranty

A prima facie claim for breach of express warranty requires the plaintiff to "show that there

was an affirmation of fact or promise by the seller, the natural tendency of which [was] to induce the

buyer to purchase and that the warranty was relied upon to the plaintiff's detriment."  *Nealy v. U.S.*

*Surgical Corp.*, 587 F.Supp.2d. 579, 584 (S.D.N.Y 2008) (internal citation and quotation omitted).

Section 2-607(3)(a) of the New York Uniform Commercial Code ("NYUCC") states that where a

tender has been accepted "the buyer must within a reasonable time after he discovers or should have

discovered any breach notify the seller of breach or be barred from any remedy."  *See also Hubbard*

*v. General Motors Corporation*, 1996 U.S. Dist. LEXIS 6974, * 13-14 (S.D.N.Y. 1996).

Here, while Maibec contends that Stern failed to provide it with notice in compliance with NYUCC Section 2-607(3)(a), accepting the allegations in the Amended Complaint as true, and drawing all reasonable inferences that can be drawn therefrom, and viewing them in the light most favorable to Stern as the non-moving party, Stern appears to have sufficiently alleged that Maibec had notice of the alleged problems with the shingles.  Further, Stern appears to have sufficiently alleged the existence and breach of an express warranty, as well as her reliance on said warranty, and damages resulting from the breach.  As such, Maibec's motion to dismiss Stern's express warranty claim is denied.

### D.     Breach of Contract

The elements for a breach of contract claim under New York law are: (1) the existence of a contract, (2) performance by the party seeking recovery, (3) non-performance by the other party, and (4) damages attributable to the breach.  *Marks v. New York Univ.*, 61 F.Supp.2d 81, 88 (S.D.N.Y. 1999) (internal citation omitted).  Here, Stern alleges that she entered into a contract and warranty agreement with Maibec.  (ECF No. 9, ¶ 73).  Stern further alleges that  she fully performed under the contract, and that Maibec has not performed under the contract.  *Id.* at ¶¶ 78, 74, 76.  Stern also claims that she suffered damages as a result of Maibec's alleged breach of contract.  *Id.* at ¶ 79.  As such, it appears as though  Stern has met the pleading requirements for a breach of contract claim. While Maibec maintains that Stern's breach of contract claim is superfluous of her breach of warranty claim, the Court declines to dismiss Stern's breach of contract action at this point of the litigation.  Accordingly, Maibec's motion to dismiss Stern's breach of contract claim is denied.

**E.     Breach of Implied Warranty and Breach of the Implied Warranty of Merchantability**

A prima facie claim for breach of implied warranty "requires that the plaintiff prove that the product is not fit for the ordinary purposes for which such goods are used." *Nealy v. U.S. Surgical Corp.*, 587 F.Supp.2d 579, 584 (S.D.N.Y 2008).  As is the case with a claim for breach of express warranty, a claim for breach of implied warranty requires the plaintiff to establish causation.  *See, e.g., Clarke v. Helene Curtis, Inc.,* 742 N.Y.S.2d 325, 327 (App. Div. 2002) (citations omitted). It is well established that "[t]he implied warranty of merchantability is a guarantee by the seller that its goods are fit for the intended purpose for which they are used and that they will pass in the trade without objection." *Wojcik v. Empire Forklift, Inc.*, 783 N.Y.S.2d 698, 700 (App. Div. 2004) (internal quotation marks omitted).  "Under New York law, privity is generally required to recover economic losses pursuant to a cause of action for breach of implied warranty." *Westport Marina, Inc. v. Boulay*, 783 F. Supp. 2d 344, 356 (E.D.N.Y. 2010).

Here, the Amended Complaint appears to satisfy the privity requirement, as Stern alleges that she was a "direct purchaser" of Maibec shingles.  (ECF No. 9, ¶ 4).  Further, for the reasons expressed in Section II(C) above, the Court rejects Maibec's contentions about lack of notice. Moreover, the Court has reviewed the allegations in the Amended Complaint, and  accepting them as true, drawing all reasonable inferences therefrom, and viewing them in the light most favorable to Stern as the non-moving party, Stern appears to have sufficiently alleged claims for breach of implied warranty and breach of the implied warranty of merchantability. Accordingly, Maibec's motion to dismiss Stern's implied warranty claims is denied.

**F.    Negligence and Strict Products Liability Claims**

New York courts generally consider strict products liability and negligence claims to be "functionally synonymous." *See Pinello v. Andreas Stihl Ag & Co. KG,* 2011 U.S. Dist. LEXIS 34460, * 41-42 (N.D.N.Y Mar. 31, 2011) (*citing Denny v. Ford Motor Co.*, 87 N.Y.2d 248 (1995). Maibec argues that Stern's negligence and strict liability claims are barred by the economic loss rule. Under the economic loss doctrine, "[t]ort recovery in strict products liability and negligence against a manufacturer should not be available to a down-stream purchaser where the claimed losses flow from damage to the property that is the subject of the contract." *Prue v. Fiber Composites, LLC*, 2012 U.S. Dist. LEXIS 54027, * 10-11 (E.D.N.Y. 2012) (*citing Bocre Leasing Corp. v. Gen. Motors Corp.*, 84 N.Y.2d 685, 694, (1995); *532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr., Inc.*, 750 N.E.2d 1097, 1101 n.1 (2001). "Put differently, no tort recovery can be had against the manufacturer for contractually based economic loss, whether due to injury to the product itself or consequential losses flowing therefrom." *Id.* (internal citation and quotations omitted).

Here, Stern's claims against Maibec are contractual in nature, not based in tort.  Stern alleges that the shingles on her home are cupping and/or buckling, which has caused damage to the shingles themselves, as well as to the underlying structure of her home, and decreased the value of her home. Here, breach of contract damages apply.  As such, the case of *Hemming v. Certainteed Corporation*, 97 A.D.2d 976 (App. Div. 1983) is instructive.  In *Hemming*, "the essence of plaintiffs' claims [was] that the shingles, sheathing and nails ("siding systems") did not perform properly to protect their homes and, as a consequence, they have suffered direct loss to the siding itself and consequential damages to their homes." *Id.*  The court held that the plaintiffs' "negligence and strict liability claims are properly characterized as being for 'economic loss' due to product failure." *Id.*

The facts of *Hemming* are similar to those in this case.  Accordingly, the Court holds that Stern's strict liability and negligence claims are barred by the economic loss doctrine, and are therefore dismissed.

### G.    Section 349 of the New York General Business Law Claim

Section § 349(a) of the New York General Business Law declares that "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service" in New York are unlawful.  "To make out a prima facie case under Section 349, a plaintiff must demonstrate that (1) defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result."  *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000) (per curiam) (*citing Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 25 (1995)).  The New York Court of Appeals has adopted an objective definition of "misleading," under which the alleged act must be "likely to mislead a reasonable consumer acting reasonably under the circumstances."  *Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 126 (2d Cir. N.Y. 2007) (*citing Oswego Laborers' Local 214 Pension Fund*, 85 N.Y.2d at 26).  The plausibility of the allegations concerning the deceptive acts or practices is "crucial to pleading a cause of action" under Section 349.  *Woods v. Maytag Co.*, 2010 U.S. Dist. LEXIS 116595, *43 (S.D.N.Y. 2010) (internal citation and quotations omitted).  Conclusory allegations have been held to be insufficient to state a claim under Section 349.  *Id.* (internal citations omitted).  When the "most significant contentions are made on information and belief plaintiffs will fail to set forth a cause of action" under Section 349.  *Id.*  The "determinative issue is whether Plaintiff has set forth enough facts to support the contention that the alleged deceptive act or practice plausibly could have occurred."  *Id.* at 43-44.

Stern appears to sufficiently plead that she has been injured as a result of Maibec's allegedly deceptive acts. (ECF No. 9, ¶ 43). Stern also appears to sufficiently plead that Maibec's allegedly deceptive acts were aimed at consumers, as Stern includes information about the shingles posted on Maibec's website in the Amended Complaint. *Id.* at ¶¶ 14-16. However, the allegations in support of Stern's contention that Maibec's alleged acts are misleading in a material way do not appear to be sufficient to survive Maibec's motion to dismiss. The Amended Complaint specifically states that "[t]he following allegations are made upon information and belief, except as to allegations specifically pertaining to Plaintiffs, which are made upon personal knowledge." *Id.* at p.1. As such, it appears that the most significant allegations in support of her assertion that Maibec's acts are misleading in a material way are made upon information and belief. *Id.* at ¶¶ 17-23, 134-142. The fact that the most significant allegations concerning Maibec's alleged materially misleading acts are made upon information and belief fails to establish their plausibility. *See Woods*, 2010 U.S. Dist. LEXIS 116595 at *45. Moreover, these allegations lack specificity. *Id.* Accordingly, Stern's Section 349 claim is dismissed.

### H.      Section 350 of the New York General Business Law Claim

NYGBL § 350 states that "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service" in New York is unlawful. "The standard for recovery under [NYGBL] § 350, while specific to false advertising, is otherwise identical to [NYGBL § ] 349." *Rodriguez v. Lunch*, 2010 U.S. Dist. LEXIS 16622, * 31-33 (S.D.N.Y. 2010) (*citing Goshen v. Mutual Life Insurance Company of New York*, 98 N.Y.2d 314, 324 n.1 (2002)). As such, to establish a prima facie case under NYGBL § 350, a plaintiff must show: (1) the defendant directed advertisements at consumers; (2) the advertisements mislead in a material way; and (3) an injury, as a result of the advertisements. *Id.* at 32 (*citing Maurizio v. Goldsmith*, 230 F.3d 518, 522 (2d Cir.

2000)).  "Additionally, unlike a claim brought under NYGBL § 349, a claim brought pursuant to NYGBL § 350 requires proof of actual reliance." *Id.* (*citing Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005)).

   For the reasons detailed in the analysis of Stern's Section 349 claim, Stern has not stated a claim for relief, under Section 350.  Accordingly, Stern's Section 350 claim is dismissed.

   ## I.    Unjust Enrichment

   Unjust enrichment is a quasi-contract theory of recovery, and "is an obligation imposed by equity to prevent injustice, in the absence of an actual agreement between the parties concerned." *Georgia Malone & Co. Inc.*, *v. Ralph Rieder*, 926 N.Y.S.2d 494, 497 (App. Div. 2011) (*quoting IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 142 (2009).  The plaintiff must show that the other party was enriched, at plaintiff's expense, and that "it is against equity and good conscience to permit [the other party] to retain what is sought to be recovered." *Id.* (*quoting Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 182 (2001)).  Unjust enrichment is a quasi-contractual claim that "can be maintained only in the absence of a valid, enforceable contract." *Spread Enters. v. First Data Merch. Servs. Corp.*, 2012 U.S. Dist. LEXIS 119080, * 14-15 (E.D.N.Y. Aug. 22, 2012) (*citing Ohio Players, Inc. v. Polygram Records, Inc.*, No. 99-CV-0033, 2000 U.S. Dist. LEXIS 15710, at *4 (S.D.N.Y. Oct. 27, 2000).  Since the shingles purchased by Stern are covered by an express written warranty, Stern cannot maintain her unjust enrichment claim.  Accordingly, Stern's unjust enrichment claim is dismissed.

   ## III.    CONCLUSION

   Based on the foregoing, Maibec's motion to dismiss the Amended Complaint is granted as to Counts One (New Jersey Consumer Fraud Act), Six (Negligence), Seven (Strict Products Liability), and Eight (Unjust Enrichment).  Maibec's motion to dismiss the Amended Complaint as

to Count Nine (Sections 349 and 350 of the New York General Business Law) is granted, with leave

for Stern to file a Second Amended Complaint within 30 days of the date of this Memorandum and

Order.  Maibec's motion to dismiss the Amended Complaint is denied as to Counts Two (Breach of

Contract), Three (Breach of Express Warranty), Four (Breach of Implied Warranty), and Five

(Breach of Warranty of Merchantability).

**ORDER**

This matter having come before the Court on Maibec's motion to dismiss (ECF No. 14), and

this Court having considered the parties' written submissions and decided the matter without oral

argument pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Civil Rule 78.1; and

for the reasons stated above;

**IT IS** on this 5th day of November, 2012,

**ORDERED** that Counts One (New Jersey Consumer Fraud Act), Six (Negligence), Seven

(Strict Products Liability), and Eight (Unjust Enrichment) of the Amended Complaint are dismissed

with prejudice; and it is further

**ORDERED** that Count Nine (Sections 349 and 350 of the New York General Business Law)

of the Amended Complaint is dismissed without prejudice and with leave for Stern to replead this

claim within 30 days from the date of this Memorandum and Order; and it is further

**ORDERED** Maibec's motion to dismiss the Amended Complaint as to Counts Two (Breach

of Contract), Three (Breach of Express Warranty), Four (Breach of Implied Warranty), and Five

(Breach of Warranty of Merchantability) is denied.


*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.