# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

ILENE STERN and MELISSA
McCAFFREY, individually and on behalf
of all similarly situated,

      *Plaintiffs,*

      v.

MAIBEC INCORPORATED,

      *Defendant.*

Civil Action No:
11-cv-3951 (PGS)(TJB)


**MEMORANDUM
AND
ORDER**

Presently before the Court is Defendant Maibec Inc.'s Motion for Summary Judgment of Plaintiff Ilene Stern and Melissa McCaffrey's Third Amended Complaint. (ECF No. 257). This matter arises from advertisements that Maibec purportedly made on its website and in brochures, about the quality and durability of its shingles. Plaintiffs allege that these shingles did not perform as advertised and, as such, allege claims of breach of contract, breach of express and implied warranties, and deceptive practices under New York General Business Law § 349. For the reasons discussed herein, Defendant's motion is granted in part and denied in part.

## BACKGROUND

Maibec is a leading manufacturer of eastern white cedar shingles in North America and Canada's leading manufacturer of wood siding. (Defendant's Statement of Material Facts [SOMF] at ¶¶ 11-12). Maibec does not sell its shingles directly to homeowners; instead, it sells shingles to distributors, who then sell to Maibec dealers, who in turn sell to lumber yards, contractors, or builders. (*Id.* at ¶ 15). Maibec offers two separate warranties for its eastern white shingles: (1) a

50-year warranty against wood decay; and (2) a warranty against stain failure. (*Id.* at ¶ 28). The

50-year limited warranty states:

> Under the terms of this warranty, [M]aibec [I]nc. warrants the product against
> decay for a period of fifty (50) years from the date of purchase. This warranty is
> void should the product be immersed in water or come into direct contact with the
> ground or adjacent horizontal structures (ex.: decks). This warranty does not cover
> any other damages, [M]aibec [I]nc. reserves the right to void all warranties if the
> installation requirements are not respected. The requirements are found in the
> product box or on the [M]aibec® website. The purchaser recognizes that the product
> is subject to naturally occurring variations (contraction/expansion, texture, minor
> dimensional differences). [M]aibec [I]nc. reserves the right to inspect the product
> prior to any repairs, and to conform that the product displays the defect covered by
> this warranty."

(ECF. No. 257-16 "Exhibit M"). The Limited Warranty also included a notice provision which

states, "[a]ny claim under this warranty by the purchaser or subsequent owner, as the case may be,

must be made in writing during the period covered by the warranty and must include the original

invoice." (Defendant's SOMF at ¶ 29). According to Maibec, the 50-year warranty covers rot,

"which is decomposition through the action of bacteria and fungi." (*Id.* at ¶ 31). Nevertheless, if,

within five years of the wood decay warranty, the shingles begin to rot or decompose, Maibec will

cover the cost of the replacement shingles and labor to install it. (*Id.* at ¶ 29). After this period,

Maibec will cover the cost of replacement shingles that fall within the 50-year warranty. (*Id.*).

On its website, Maibec advertised its eastern white cedar shingles, claiming that it "is very

durable and requires very little maintenance." (Plaintiff's SOMF at ¶ 3). In addition, Maibec

offered brochures that made the following representations: (1) "Timeless. Traditional. And

tougher than ever."; (2) "At [M]aibec, we have spent the last four decades improving the way

white cedar shingles are made. Today, they are engineered to be so durable that you just might

consider them high tech."; (3) "Best of all, [M]aibec shingles are guaranteed to last"; and (4) "The

fact that they are low maintenance and look even better as they age is just an additional benefit."
(*Id.* at ¶ 4).

In the spring or summer of 2008, Stern installed Maibec shingles on her home, as part of a home renovation project. (Plaintiffs' SOMF at ¶ 2). Initially, Stern was considering a competitor's shingles, since they were maintenance free; however, her contractor preferred using Maibec shingles and assured her that Maibec offered the same warranties as the competitor and that Maibec shingles would require no maintenance. (Defendant's SOMF at ¶¶ 37-38). After speaking with her contractor, Stern went to Maibec's website to understand the terms of its warranty and the quality of the product. (*Id.* at ¶¶ 40-42). At deposition, Stern claimed that she spent 5 to 10 hours on the Maibec website, in considering installation of Maibec shingles. (ECF No. 257-13, "Stern Deposition" at 337). When presented with the statements made on Maibec's website, which were identified in the Third Amended Complaint, Stern claimed she could not recall reading any of the following statements:

> Eastern white cedar is very durable and requires very little maintenance. It contains natural preservatives which protect it from rot and insects.
>
> . . . .
>
> When it comes to siding a house, nothing compares to eastern white cedar. It is warm, beautiful, and has proven reliable for over a century. At Maibec, we have spent the last four decades improving the way white cedar shingles are made. Today, they are engineered to be so durable, you just might consider them high tech.
>
> . . . .
>
> Best of all, Maibec shingles are guaranteed to last. Our original 50-year warranty against wood decay, up to 30 years* warranty on two coats of solid stain and 5-year warranty on labour is one of the best warranties in the industry.

(*Id.* at 168-70; Third Amended Complaint at ¶¶ 15-17). She did, however, recall reading the "very durable and requires very little maintenance" language that was advertised on Maibec's website. (*Id.* at 313-14).

Two years after installation of the shingles, mold began to develop on her shingles; however, shortly thereafter, Maibec provided a cleaning solution to remove it. (Defendant's SOMF at ¶ 49). The following year, summer of 2011, Stern began noticing that her shingles were warping, cupping, and lifting. (*Id.* at ¶¶ 50-52). According to Maibec, Stern never notified it of these issues and, instead, joined in this lawsuit. (*Id.* at ¶¶ 53-54). Stern, however, contends she complained to a Maibec employee, Keith Ball, about the mold and warping. (Plaintiffs' SOMF at ¶¶ 23-24). During Ball's inspection of Stern's house, he concluded that the warping and other issues were not due to improper installation. (*Id.* at ¶ 25). Stern claims that the shingles have not matched her expectations and due to "the deterioration and deformation of [the] shingles, they need to be replaced." (*Id.* at ¶¶ 20-21).

McCaffrey alleges similar issues. Between February and May 5, 2007, McCaffrey had Maibec shingles installed on her home as part of a home renovation project. (*Id.* at ¶ 26). Before beginning renovations, she explained to her contractor that she wanted a "natural look" to her house, to which he recommended using Maibec shingles. (Defendant's SOMF at ¶¶ 85-86). Her contractor explained to her that Maibec has an "excellent warranty" and its shingles are not supposed to peel. (*Id.* at ¶ 88). Thereafter, she claimed to have searched Maibec's website, before deciding to use its shingles. (*Id.* at ¶ 89). According to McCaffrey, she spent twenty hours researching the Maibec website and viewing properties where Maibec shingles were installed. (ECF No. 257-14, "McCaffrey Deposition" at 306). Although McCaffrey claimed that she recalled reading on the website that the shingles would be durable and maintenance free, when

presented with the quotes identified in the Third Amended Complaint, she was unable to recall whether she considered these statements when deciding to purchase Maibec shingles. (*Id.* at 188-89).

Like Stern, McCaffrey experienced issues with her shingles shortly after having them installed. In 2012 or 2013, roughly five years after installation, McCaffrey claims to have noticed that the shingles "were peeling, cracking, mold, cupping, warping, buckling, and curling." (Plaintiff's SOMF at ¶ 27). According to McCaffrey, these problems have worsened and require replacement. (*Id.*). McCaffrey also claims to have contacted Maibec on several occasions regarding these issues. (*Id.* at ¶ 28). Specifically, in July 2013, she claims to have emailed Maibec about these issues and talked to a Maibec representative. (*Id.*). She also claims that her husband completed and mailed a Maibec complaint form on September 16, 2013. (*Id.* at ¶ 28-29). Like Stern, McCaffrey claims to have relied on representations made on Maibec's website in deciding to use its shingles and that she did not expect these shingles to have "material imperfections." (*Id.* at ¶¶ at 31-34).

Maibec now seeks summary judgment dismissal of Plaintiffs' remaining claims: breach of contract (Count I), breach of express warranty (Count II), breach of implied warranty (Count III), breach of warranty of merchantability (Count IV), and violation of New York General Business Law § 349 (Count VIII).

## LEGAL STANDARD

Summary judgment is appropriate under Federal Rule of Civil Procedure 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A factual dispute is genuine if a reasonable jury could return a

verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorp.*, 912 F.2d 654, 657 (3d Cir. 1990); see also Fed. R. Civ. P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial").

Moreover, only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *Anderson*, 477 U.S. at 247-48. If a court determines, "after drawing all inferences in favor of [the non-moving party], and making all credibility determinations in his favor...that no reasonable jury could find for him, summary judgment is appropriate." *Alevras v. Tacopina*, 226 F. App'x 222, 227 (3d Cir. 2007).

**ANALYSIS**

Count I: Breach of Contract[1]

In Count I, Plaintiffs assert a claim of breach of contract. Under New York law,[2] in order to state a claim of breach of contract, "a plaintiff must demonstrate: '(1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages.'" *McAnaney v. Astoria Fin. Corp.*, 665 F. Supp. 2d 132, 170-71 (E.D.N.Y. 2009) (quoting *Rexnord Holdings v. Bidermann*, 21 F.3d 522, 525 (2d Cir. 1994)).

Here, neither Plaintiff claims to have entered a contract with Maibec or that such a contract exists. Instead, Plaintiffs claim to be remote purchasers of these shingles, since their contractors purchased these shingles on their behalf. However, "[u]nder New York law, no privity exists between a manufacturer and a downstream or indirect purchaser." *Waldman v. New Chapter, Inc.*, 714 F. Supp. 2d 398, 402 (E.D.N.Y. 2010). In fact, "New York courts consistently reject contract-based claims brought by indirect purchasers or lessees against manufacturers." *Id.*; *see also Jesmer v. Retail Magic, Inc.*, 55 A.D.3d 171, 173 (N.Y. App. Div. 2008) (holding that the end user of a computer system could not maintain a lawsuit against the manufacturer where no contract existed between the two parties). Here, given the absence of privity between Plaintiffs and Maibec, Plaintiffs lack any legal basis to assert a breach of contract; therefore, the Court will grant Maibec's summary judgment motion on Count I.

Count II: Breach of Express Warranty

---

[1] Plaintiffs' brief does not address Maibec's argument relating to breach of contract, finding them "moot" based on the Courts' prior decision that Maibec's Limited Warranty against decay only applied to fungal decay, not wood movement. Nevertheless, for the sake of completion, the Court briefly addresses each issue.

[2] Both parties agree that New York law governs the substantive issues of law in this case. (ECF No. 17 at 15; Def's Brief in Supp. at 5 n.4).

Maibec next seeks summary judgment dismissal of Plaintiffs' breach of express warranty claim since: (1) Plaintiffs did not comply with pre-suit notice requirements; and (2) Maibec's advertisements did not constitute express warranties. Plaintiffs contend the notice requirement is inapplicable and that Maibec's advertisements establish the existence of an express warranty. The Court addresses each issue in turn.

*1. Notice*

As an initial matter, Defendants contend that Plaintiffs' claims should be dismissed altogether since they failed to give it notice of the alleged defects prior to brining this lawsuit. Plaintiffs respond that such notice was not required.

"Under New York law, a buyer must provide the seller with timely notice of an alleged breach of warranty." *Singleton v. Fifth Generation, Inc.*, No. 15-474, 2016 U.S. Dist. LEXIS 14000, at *39 (N.D.N.Y. Jan. 12, 2016) (citing N.Y. U.C.C. § 2-607(3)(a)). Courts will generally enforce agreements that require notice and an opportunity to cure as conditions precedent to bringing a lawsuit. *See USI Ins. Servs. LLC v. Miner*, 801 F. Supp. 2d 175, 181 (S.D.N.Y. 2011). Here, Maibec contends its limited warranty agreements require such notice, prior to filing a lawsuit. The provision states:

> This warranty is automatically transferable to the subsequent purchaser of the residential or commercial building upon which the product has been installed. Any claim under this warranty by the purchaser or subsequent owner, as the case may be, must be made in writing during the period covered by the warranty and must include the original invoice for the product. The quantity of replacement product will correspond to the quantity of product damaged by decay.

(ECF. No. 257-16 "Exhibit M"). A plain reading of this provision does not suggest that a purchaser must file a written notice prior to suit; instead, it simply pertains to any individual that seeks coverage under the warranty. As such, since this provision is not a condition precedent to Plaintiffs' filing of the present lawsuit, Maibec's lack of notice argument is unavailing. In addition,

"under New York law, the filing of a complaint could constitute sufficient notice." *In re Ford Motor Co. E-350 Van Prods. Liab. Litig.*, No. 03-4558, 2010 U.S. Dist. LEXIS 68241, at *226 (D.N.J. July 9, 2010) (citing *Panda Capital Corp. v. Kopo Int'l, Inc.*, 242 A.D.2d 690, 692 (N.Y. App. Div. 1997)). For these reasons the Court rejects Maibec's notice argument.

*2. Breach of Warranty*

Given the Court's prior decision, which held that Maibec's Limited Warranty was limited to fungal decay, Plaintiffs do not rely on the limited warranty in asserting their breach of express warranty. Instead, relying on Maibec's advertisements, Plaintiffs maintain that Maibec created express warranties that were breached. Maibec contends it never made such statements or, alternatively, the advertising statements were not express warranties.

"New York breach of express warranty claims require (i) a material statement amounting to a warranty; (ii) the buyer's reliance on this warranty as a basis for the contract with his immediate seller; (iii) the breach of this warranty; and (iv) injury to the buyer caused by the breach." *Avola v. Louisiana-Pacific Corp.*, 991 F. Supp. 2d 381, 391 (E.D.N.Y. 2013). Although a buyer may "not have contracted with the manufacturer, the buyer may still bring a claim against the manufacturer based on the manufacturer's advertisements, upon which the buyer relied when contracting with his immediate seller." *Id.*; *Arthur Glick Leasing, Inc. v. William J. Petzold, Inc.*, 51 A.D.3d 1114, 1116 (N.Y. App. Div. 2008); *see also* N.Y. U.C.C. Law § 2-313. "The New York Court of Appeals has dispensed with the requirement of privity in cases involving breach of an express warranty where only economic damages are alleged." *Mahoney v. Endo Health Solutions, Inc.*, No. 15-9841, 2016 U.S. Dist. LEXIS 94732, at *16 (S.D.N.Y. July 20, 2016) (citing *Randy Knitwear, Inc. v. Am. Cyanamid Co.*, 181 N.E.2d 399, 401-03 (N.Y. 1962)). Here, Maibec

contends that Plaintiffs fail to satisfy the necessary elements to maintain a breach of express warranty claim. Each element is addressed below.

i. Materiality

Turning to the first element, materiality, Maibec contends it never guaranteed "no maintenance" and the statements on its website were mere puffery, which no reasonable jury would find creates an express warranty. "Puffery is an exaggeration or overstatement expressed in broad, vague, and commendatory language." *Castrol, Inc. v. Pennzoil Co.*, 987 F.2d 939, 945 (3d Cir. 1993). In determining whether such statements constitute puffery, courts have considered several factors: "(i) vagueness; (ii) subjectivity; and (iii) inability to influence the buyers' expectations." *Avola*, 991 F. Supp. 2d at 392.

"The 'vagueness' factor applies when the disputed statements fail to describe a specific characteristic of the product on which the claims are based." *Id.* at 392. Statements that are specific and measurable are not considered puffery; however, statements claiming to be superior or better than other products, without more, are. *See Castrol, Inc.*, 987 F.2d at 946; *Nikkal Indus. v. Salton, Inc.*, 735 F. Supp. 1227, 1234 n.3 (S.D.N.Y. 1990) (General statements that a product is better than its competitor "constitute mere 'puffing,' and are not actionable as false advertising"). Similarly, "[g]eneral descriptions about the product—e.g., high-speed internet service as the 'fastest, easiest way to get online'; a truck as the 'most dependable, long-lasting'; or an insurance policy as providing that its policyholders are 'in Good Hands™'—can constitute puffery." *Avola*, 991 F. Supp. 2d at 393 (citations omitted). Here, Maibec's website represented that: (1) its shingles were "tougher than ever"; (2) "they are engineered to be so durable that you might consider them high tech"; (3) and "[they] are guaranteed to last." (Plaintiffs' SOMF at ¶ 4). As such, unlike the statements mentioned in *Avola*, 991 F. Supp. 2d at 393, the statements on Maibec's website do not

present generalized claims of superiority, but emphasize the shingle's durability and low maintenance.

"The 'subjectivity' factor applies when the disputed statements may not be measured on an objective basis, such as by reference to clinical studies or comparison with the product's competitors." *Avola*, 991 F. Supp. 2d at 393. "Examples of puffery that satisfy this second factor have included statements that a stereo system reflects the 'most life-like reproduction of orchestral and vocal sounds' or that a chain of hotels maintains 'standards proud enough to bear [the founder's] name.'" *Id.* (quoting *Bose Corp. v. Linear Design Labs, Inc.*, 467 F.2d 304, 310-11 & n.11 (2d Cir. 1972); *Hilton Int'l Co. Inc. v. Hilton Hotels Corp.*, 888 F. Supp. 520, 538 (S.D.N.Y. 1995)). Here, the Court is satisfied that Maibec's representations are objective. As noted above, Maibec emphasized the durability of its shingles, claiming that "[the shingles] are engineered to be so durable, you just might consider them high tech" and "guaranteed to last." Although not quantifiable, these statements are not so grandiose or lofty as to be considered subjective; rather, these statements leave a reasonable reader to expect the shingles to withstand the elements of nature and last for an extended period of time.

Finally, the Court considers whether Maibec's representations were capable of influencing Plaintiffs' expectations. "The 'inability to influence' factor applies when, among other things, the disputed statements are made by all of the product's competitors, or these statements cannot mean everything that they suggest." *Avola*, 991 F. Supp. 2d at 393. Consumers cannot rely on statements that "plainly exaggerate" the quality or benefits of a product. *Id.* at 393-94; *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 160 (2d Cir. 2007) ("Puffery is exaggerated advertising, blustering, and boasting upon which no reasonable buyer would rely" (internal quotation marks and citation omitted)); *see also Stokely-Van Camp, Inc. v. Coca-Cola Co.*, 646 F. Supp. 2d 510,

529-30 (S.D.N.Y. 2009) (finding that no reasonable customer would believe that a sport's beverage statement, "Upgrade your game," would actually improve their athletic abilities). Here, Maibec's statements are not exaggerated advertising. Maibec's representations that the shingles are durable and require low maintenance are not so overblown as to lead a purchaser to expect more from the product than it advertises. Simply put, representations emphasizing the longevity or durability of a product could certainly influence Plaintiffs' expectations when deciding whether to purchase it.

As such, when considering all three factors, Maibec has failed to demonstrate that its statements on its website constitute puffery.

ii. Reliance

Maibec next contends that Plaintiffs cannot demonstrate reliance, since neither Plaintiff recalled reading or viewing the statements on the website. The Court disagrees. In order to sustain a breach of express warranty claim, the plaintiff must have relied on representations made by the manufacturer. *See Avola*, 991 F. Supp. 2d at 394-96; *see also Westport Marina, Inc. v. Boulay*, 783 F. Supp. 2d 344, 354-55 (E.D.N.Y. 2010) (granting summary judgment on plaintiffs' breach of warranty claim where the plaintiffs failed to present any evidence suggesting that they relied on any representations made by the defendant). According to Plaintiffs' Statement of Facts, both Plaintiffs have generally claimed to have relied on statements made on Maibec's website in deciding to purchase Maibec shingles. Specifically, Stern claims to have reviewed Maibec's website for five to ten hours and relied on Maibec's representations in deciding to purchase the shingles. Similarly, McCaffrey claims to have spent time researching Maibec's website and relied on its representations that the shingles were durable and required little maintenance in deciding to purchase Maibec shingles. Although neither explicitly recalls the exact statement they relied upon, both recalled Maibec touting the durability and minimal maintenance aspects of the shingles. As

12

such, the Court is satisfied that a reasonable factfinder could conclude that Plaintiffs relied on Maibec's representations in making their purchasing decisions.

iii. Breach

Finally, Maibec contends that Plaintiffs have failed to present any credible evidence that demonstrates that the shingles breached the advertised warranty. Relying principally on their expert, Dr. Barry S. Goodell, Maibec argues that the record demonstrates that there was no breach. (ECF No. 257-8, "Goodell Report"). However, Dr. Goodell's report focused primarily on the quality and design of the Maibec shingles, and whether they conformed with Maibec's Limited Warranty; he did not address Maibec's advertised warranties. Although Plaintiffs do not submit expert testimony to support their argument that Maibec breached its advertised warranty, the evidence nevertheless suggests that the shingles did not perform as marketed. For instance, while Maibec represented that their shingles were durable and required little maintenance, both Plaintiffs experienced, within five years of installation, cracking and warping of their shingles that required replacement. As such, when viewing the facts in the light most favorable to Plaintiff, whether Maibec breached its advertised warranty is a material issue of fact best suited to be resolved at trial. Therefore, Plaintiffs' Count II survives summary judgment.

Counts III and IV: Breach of Implied Warranty and Warranty of Merchantability

Maibec next seeks summary judgment dismissal of Counts III and IV of Plaintiffs' Complaint, wherein they assert claims of breach of implied warranty and warranty of merchantability. Maibec contends that summary judgment is appropriate since Plaintiffs have failed to demonstrate privity of contract and that the shingles were not merchantable. Plaintiffs

responds, contending that since Stern[3] and Maibec contracted through agents, there is privity of contract. The Court disagrees.

"In New York, products are sold with an implied warranty of fitness that the product is fit for the ordinary purposes for which such goods are used." *Colon ex rel. v. BIC USA, Inc.*, 199 F. Supp. 2d 53, 95 (S.D.N.Y. 2001) (internal quotation marks and citation omitted); *see also* U.C.C. 2-314. "To establish that a product is defective for purposes of a breach of implied warranty of merchantability claim, a plaintiff must show that the product was not reasonably fit for [its] intended purpose, an inquiry that focuses on the expectations for the performance of the product when used in the customary, usual and reasonably foreseeable manners." *Wojcik v. Empire Forklift, Inc.*, 14 A.D.3d 63, 66 (N.Y. App. Div. 2004) (internal quotation marks and citations omitted). However, it is well-settled that "[u]nder New York law, absent privity of contract, a purchaser cannot recover mere economic loss against a manufacturer under a theory of breach of implied warranty." *Westchester Cty. v. Gen. Motors Corp.*, 555 F. Supp. 290, 294 (S.D.N.Y. 1983); *Adirondack Combustion Techs., Inc. v. Unicontrol, Inc.*, 17 A.D.3d 825, 827 (N.Y. App. Div. 2005) ("A claim based upon a breach of an implied warranty requires a showing of privity between the manufacturer and the plaintiff when there is no claim for personal injuries.").

Stern attempts to demonstrate an agency relationship between her contractor and Maibec, in order to establish privity between Stern and Maibec. The basis of this purported agency relationship is predicated on the fact that Stern's contractor purchased Maibec shingles at a Maibec-authorized dealer, Kleet Lumber, which Plaintiff claims acted as Maibec's agent. In New York, an "agency relationship requires manifestation of one party's willingness to allow another

---

[3] Plaintiffs' implied warranty arguments are limited to Plaintiff Stern, as McCaffrey submitted no evidence of privity between herself and Maibec. As such, the Court will dismiss Counts III and VI as they relate to Plaintiff McCaffrey.

14

to 'act for it subject to the principal's control and within the limits of the authority thus conferred.'" *Bristol Vill., Inc. v. Louisiana-Pacific Corp.*, 916 F. Supp. 2d 357, 364 (W.D.N.Y. 2012) (quoting *Pensee Assocs. v. Quon Indus.*, 241 A.D.2d 354, 359 (N.Y. App. Div. 1997)). Here, Plaintiff has presented no facts that demonstrate that Maibec exercised control over Kleet Lumber's operations or that Maibec held Kleet Lumber out as its agent, giving it authority to act on its behalf. More importantly, nothing in the record suggests that Kleet Lumber even dealt directly with Maibec in preparing Stern's order. Simply put, the record is bereft of any facts that would allow a reasonable factfinder to infer the existence of an agency relationship. *See Bristol Vill., Inc.*, 916 F. Supp. 2d at 364; *see also Arthur Glick Leasing, Inc.*, 51 A.D.3d at 1116-17. Therefore, given that there is no cognizable proof of an agency relationship, the Court will grant summary judgment dismissal of Counts III and IV.

Count VIII: Violation of GBL Section 349[4]

Finally, Maibec seeks summary judgment dismissal of Count VIII of Plaintiff's Complaint, which alleges violation of Section 349 of New York's General Business Law. Specifically, Maibec contends: (1) Plaintiffs' Section 349 claims are barred by statute of limitations; (2) Maibec made no unlawful misrepresentations or omissions; and (3) Plaintiffs cannot prove defect or causation.

Section 349 proscribes "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state" and is governed by a three-year statute of limitations. *See Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1184 (N.Y. 2012). "A plaintiff under section 349 must prove three elements: first, that the challenged act or practice was

---

[4] Plaintiffs' Section 349 arguments are limited to Plaintiff Stern, since McCaffrey's claim is time-barred. As such, the Court will dismiss Count VIII as it relates to Plaintiff McCaffrey.

consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act[.]" *Tomasino v. Estee Lauder Cos.*, 44 F. Supp. 3d 251, 257 (E.D.N.Y. 2014) (quoting *Stutman v. Chem. Bank*, 731 N.E. 2d 608, 611 (N.Y. 2000)).

Defendants first contend that since claims under Section 349 accrue on the date of purchase, Count VIII falls outside of the prescribed statute of limitations. Under Section 349, the date of discovery rule does not apply; as such, the accrual of a Section 349 claim is not based on the date in which the defect is discovered, but when the injury occurred. *Marshall v. Hyundai Motor Am.*, 51 F. Supp. 3d 451, 462 (S.D.N.Y. 2014). More importantly, under Section 349, courts have held that the injury occurs on the date that a product is purchased, delivered, and installed. *See Bristol Vill., Inc. v. Louisiana-Pacific Corp.*, 170 F. Supp. 3d 488, 498-99 (W.D.N.Y. 2016); *see also Statler v. Dell, Inc.*, 775 F. Supp. 474, 484 (E.D.N.Y. 2011) (same). As this motion relates to McCaffrey, since her claim accrued, at the latest, on May 5, 2007, her claims falls outside of the statute of limitations.[5] However, the record is not as clear for Stern. Defendants point to three invoices, dated May 12, May 21, and July 3, 2008, as evidence that places Plaintiff's claim beyond the three year statute of limitations. (ECF No. 259-3 at 167-69). However, these invoices do not establish whether these shingles were delivered or installed prior thereto. In addition, according to Stern, her shingles were installed either in the spring or summer of 2008. As such, a material issue of fact exists as to whether her shingles were installed prior to July 8, 2008. Therefore, summary judgment will not be granted as to Stern based on statute of limitations grounds.

---

[5] It is worth briefly noting that McCaffrey's claims would not be saved based on equitable tolling, since both her Section 349 and equitable estoppel claims are based on the same misconduct. *Robare v. Fortune Brands, Inc.*, 39 A.D.3d 1045, 1046 (N.Y. App. Div. 2007) ("equitable estoppel does not apply where the misrepresentation or act of concealment underlying the estoppel claim is the same act which forms the basis of [the] plaintiff's underlying substantive cause[s] of action.").

Defendant next contends that Stern nevertheless fails to state a claim under Section 349, since she fails to set forth evidence demonstrating a material misrepresentation or causation. However, for the reasons discussed above, the Court is satisfied that Maibec's advertisements were not mere puffery, but constituted an actionable express warranty. As such, since the shingles failed to perform as advertised, there exists a material misrepresentation which Stern relied upon in making her purchase. As such, Count VIII, as it relates to Stern, survives Defendant's motion for summary judgment.

## ORDER

Having carefully reviewed and taken into consideration the submissions of the parties, as well as the arguments and exhibits therein presented, and for good cause shown, and for all of the foregoing reasons,

IT IS on this ___ day of April, 2018,

ORDERED that Defendant's Motion for Summary Judgment is GRANTED in part and DENIED in part, as follows:

1. Count I (Breach of Contract) is GRANTED;

2. Count II (Breach of Express Warranty) is DENIED;

3. Count III (Breach of Implied Warranty) is GRANTED;

4. Count IV (Breach of Implied Warranty of Merchantability) is GRANTED;

5. Count VIII (Violation of Section of GBL 349) is GRANTED as to McCaffrey and DENIED as to Stern.

PETER G. SHERIDAN, U.S.D.J.